Aaron D. Sperbeck, ABA #0511112
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
asperbeck@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for Defendant City of Wasilla

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRANDON C. LAWLER,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY OF WASILLA, and OFFICER ADAM GEBERT,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 3:25-cv-00360-ACP

## **FEDERAL RULE 12(B)(6) - MOTION TO DISMISS**

COMES NOW Defendant City of Wasilla (the "City"), by and through undersigned counsel of record, and hereby moves the Court for dismissal of Plaintiff's Complaint under the doctrine of Qualified Immunity pursuant to FRCP 12(b)(6). A valid claim for qualified immunity is "immunity from suit" and thereby provides the grounds for dismissal under Fed. R. Civ. P. 12(b)(6).[1]

---

[1]    *Pearson v. Callahan*, 555 U.S. 223, 237; 129 S. Ct. 808, 818; 172 L. Ed. 2d 565 (2009).

# I.    INTRODUCTION

This case arises from Plaintiff's intentional interference with an active police investigation under the guise of news reporting, wherein he inserted himself into an active collision scene and by doing so, created a hazard to himself, first responders and surrounding vehicle traffic. In response to being arrested, tried and convicted for violating 13AAC02.175(d), Plaintiff now brings eight claims under federal and state law, including section 42 U.S.C. § 1983, the Alaska Constitution and common law tort against Officer Adam Gebert and the City of Wasilla.

Specifically, Plaintiff claims a violation of his 1st Amendment rights for retaliation; a violation of his 4th Amendment rights for unlawful seizure and excessive force; Civil Rights Conspiracy; Municipal Liability; a violation of the Alaska Constitution Article I §§ 5 and 7; and false arrest.  As will be detailed below, each of these claims is without merit or legal basis and the law of qualified immunity is both applicable and dispositive. As such, the claims against Officer Gebert should be dismissed and as a result, claims against the City of Wasilla, under a theory of vicarious liability, should also be dismissed.

# II.    FACTS

On January 24, 2024, at approximately 6:00 p.m., the Wasilla Police Department ("WPD") was called to respond to an investigate a two-vehicle traffic collision involving minor injuries and major vehicle damage near the 1700 block of

LAWLER V. CITY OF WASILLA, ET AL                                    CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                    PAGE 2 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP      Document 18      Filed 05/22/26      Page 2 of 24

E Palmer-Wasilla Highway.[2] While WPD was investigating the collision, Ofc. Gebert observed an adult male, dressed in all dark clothing and a dark hat, who appeared to be actively filming the collision scene and WPD officers from the opposite side of the roadway. The male was eventually identified as Plaintiff, Brandon Lawler. Shortly after observing Lawler filming from the opposite side of the highway, Ofc. Gebert observed Lawler illegally crossing the Palmer-Wasilla Highway, in an area not designated for pedestrian crossing.[3]

Ofc. Gebert noted in his report that the weather conditions during this time were dark and occurred during rush-hour traffic with many vehicles on the roadway. After Lawler crossed the eastbound lanes of travel, he entered into the active investigation scene of the collision, in the westbound lanes of travel, and again started to film. This time, Ofc. Gebert observed that Lawler had begun filming inside one of the damaged vehicles in addition to filming the on scene officers. Ofc. Gebert initiated contact with Lawler to verify whether or not he was associated with or involved in the collision. Lawler immediately became confrontational and belligerent, screaming at Ofc. Gebert "do not touch me" and refusing to engage in a normal conversation. Ater verifying that Lawler was neither associated nor involved in the collision, he was asked to leave the immediate accident scene investigation area.

---

[2]     Exhibit A.

[3]     13 AAC 02.175(d): Pedestrian Must Not Create Unreasonable Risk/Interfere with Normal Flow of Traffic

LAWLER V. CITY OF WASILLA, ET AL                                  CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                  PAGE 3 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 3 of 24

Lawler refused to leave the scene and when asked for his identification, Lawler refused to identify himself.  Even after being informed that he had committed a pedestrian violation for which he would receive a citation, he still refused to identify himself, opting to engage in a provocative escalation of the situation to entertain his online viewers.[4] As a result of his refusal to provide identifying information and refusal to leave the area when directed, Lawler was subsequently detained and later arrested for disorderly conduct and remanded to Mat-Su Pretrial for creating a hazardous condition for himself and for the numerous motorists on the roadway with his illegal road crossing.  Lawler was also cited for the pedestrian violation, for being in the roadway and creating an unreasonable risk of danger to himself.[5]  At no time was Lawler stopped because he was engaged in filming the scene. Rather, he was stopped because he committed a crime, and instead of complying with lawful commands, he chose to be a non-compliant, belligerent antagonist.

## III.  APPLICABLE LAW

### A.  Federal Rule 12(b)(6) – Failure to State a Claim

"When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the

---

[4]     Exhibit B – Lawler YouTube Video.

[5]     Alaska Statute 11.61.110(a)(6) – Disorderly Conduct

plaintiff."[6] However, the complaint must indicate more than mere speculation of a right to relief.[7] "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[8] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[9] Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.[10] Qualified immunity can be asserted through a Rule 12(b)(6) motion.[11]

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[12] A court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported

---

[6] *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

[10] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[11] See *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (deciding issue of qualified immunity asserted in Rule 12(b)(6) motion), vacated and remanded on other grounds, in *Hunter v. Hydrick*, 556 U.S. 1256 (2009).

[12] *Reichle v. Howards*, 566 U.S. 658, 664 (2012), citing *Ashcroft v. Al-Kidd,* 563 U.S. 731, 735 (2011).

LAWLER V. CITY OF WASILLA, ET AL
RULE 12(B)(6) MOTION TO DISMISS
505780\271\2107732
CASE NO. 3:25-CV-00360-ACP
PAGE 5 OF 24

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 5 of 24

right exists at all."[13] The purpose of qualified immunity is to "balance two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[14]

Public officials sued in their individual capacities are presumed to enjoy qualified immunity from suit.[15] Qualified immunity is the norm, not the exception.[16] Once the defense is properly raised, the plaintiff "has the burden to negate the [qualified immunity] defense."[17]

## IV. DISCUSSION

### A. § 1983 Claim Regarding a Violation of First Amendment

The current state of the law allows a court to grant qualified immunity when the constitutional right in question is not clearly established. A court need not first address whether the defendant actually violated the constitutional right. This court should follow the current case law and decide that Ofc. Gebert is entitled to qualified immunity because of the current state of the law regarding the reasonable restrictions that may be placed upon citizens within an active police investigative scene not being clearly established. Second, that Ofc. Gebert made observations

---

[13] *Reichle v. Howards*, 566 U.S. 658, 664 (2012), citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

[14] *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

[15] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

[16] *Malley v. Briggs,* 475 U.S. 335, 340 (1986), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

[17] *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

LAWLER V. CITY OF WASILLA, ET AL                                    CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                              PAGE 6 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP      Document 18      Filed 05/22/26      Page 6 of 24

of Plaintiff engaged in criminal conduct that gave rise to a lawful right to contact Plaintiff to request identification. Finally, that Ofc. Gebert acted within the lawful authority to issue lawful commands to Plaintiff which he immediately and blatantly refused, allowing Ofc. Gebert to detain Plaintiff with a minimal amount of force necessary to effectuate the arrest.

In 2001, *Saucier v. Katz* imposed a mandatory two-step process on qualified immunity analyses: first a court must decide whether the defendant violated the plaintiff's constitutional rights, then, if so, decide whether the constitutional right was clearly established at the time.[18] The Supreme Court reasoned that if future courts were able to bypass the constitutional questions at issue in qualified immunity cases, then the "the law might be deprived" of those future decisions on important constitutional rights.[19]

Eight years later, in the 2009 *Pearson* decision, the Supreme Court reversed itself and concluded that *Saucier*'s two-step process was not mandatory.[20] In reaching this conclusion, Justice Alito recognized that courts considered the process mandated by *Saucier* to be unduly burdensome.[21] Justice Alito also explained that the process wasted the parties' resources, writing that "*Saucier*'s two-step protocol 'disserve[s] the purpose of qualified immunity' when it 'forces the

---

[18]     *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[19]     *Saucier* at 201.

[20]     *Pearson* at 223.

[21]     *Pearson* at 236-37.

LAWLER V. CITY OF WASILLA, ET AL      CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS      PAGE 7 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 7 of 24

parties to endure additional burdens of suit—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily.'" [22]

Concerns about the burdens of litigation therefore led the Supreme Court to allow lower courts to set aside the decision on whether the conduct was unconstitutional if they could grant the qualified immunity motion on the grounds that the right was not clearly established. As a result, *Pearson* now allows this court to avoid constitutional questions in cases where qualified immunity is clearly applicable. The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."[23] This case is still in the earliest stage, and the facts, though presumed to be true for the purposes of this motion, have yet to be fully developed through discovery. Moreover, Lawler is hyper-aggressively pursuing discovery in this case that crosses the threshold of reasonableness and forces the City to expend valuable time and resources searching for records that have no bearing whatsoever on the merits of his claims.

As such, "Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[24] "If the second prong

---

[22]    *Pearson* at 237.

[23]    *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

[24]    *Easley v. City of Riverside*, No. 16-55941, 2018 WL 2273067, at *3 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

LAWLER V. CITY OF WASILLA, ET AL                                    CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                              PAGE 8 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP    Document 18    Filed 05/22/26    Page 8 of 24

is dispositive, courts need not analyze the first."[25] The City urges the Court to begin with the issue of clearly established law regarding time, place and manner restrictions. But additionally, to consider the fact that Lawler was not prevented from filming for the sake of filming, but rather that he refused to voluntarily leave the immediate area of the scene investigation (i.e. the middle of the intersection in the road) and had to be removed therefrom. Tellingly, his video never stopped recording.[26]

Even if this court chooses to apply the strict *Saucier* two-part test, Ofc. Gebert is still entitled to qualified immunity because at least one of the elements of the test is defeated. In order to overcome the protections of qualified immunity, the Plaintiff must show that (1) the facts taken in the light most favorable to the plaintiff show the official's conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[27] Plaintiff must establish both prongs of the analysis to prevail, so if a court determines that one prong is not met, then qualified immunity applies. Long standing case law on first amendment rights in public spaces demonstrates that it is not a constitutional violation for the government to impose reasonable time, place and manner restrictions on citizens who are engaged in news gathering in order to prevent them from interfering,

---

[25]     *Id*.

[26]     See Exhibit B – YouTube Video produced by Lawler.

[27]     *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

LAWLER V. CITY OF WASILLA, ET AL                                    CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                              PAGE 9 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 9 of 24

obstructing or impeding an investigation.[28] With regard to restrictions placed upon filming an active crime scene, the U.S. District Court for Nevada has quoted, with affirmation, the following Fifth Circuit reasoning for the framework in evaluating First Amendment rights as contrasted with police power to require a person to disperse or back up:

> "[t]he rub is figuring out when filming veers from documenting to interfering.... How close is 'too close' such that the filming, however well-intentioned, becomes hazardous, diverting officers' attention and impeding their ability to perform their duties in fast-moving, highly charged situations?"[29]

This is critical because Lawler would have the Court believe that there can never be a time, place or manner of restriction placed on his first Amendment activities. Not only is that assertion incorrect, it fails to recognize that by inserting himself into an investigation scene, the request to move was not a result of a first amendment protection, but rather that he was creating an unnecessary hazard to himself and others. In *State v. Martin*,[30] the Court then analyzed AS 11.45.030(a)(2), which made it a Class B misdemeanor to willfully fail to comply with a lawful order of the police to disperse. The court wrote:

> AS 11.45.030(a)(2) as construed is violated when in a public place, a criminal offense has occurred, and a person willfully fails to comply with a lawful order of the police to disperse, a lawful order being one which is given where the person's conduct or speech substantially

---

[28]    *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972); see also *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011).

[29]    *DeCastro v. Las Vegas Metropolitan Police Dept.*, 2024 WL 4189939 *12 (D. NV. 2024) (citing *Buehler v. Dear*, 27 F.4th 969, 976 (5th Cir. 2022)).

[30]    532 P.2d 316, 322 (Alaska 1975).

impedes an officer in the performance of his duties in effecting an arrest, in investigating a crime, or in ensuring the public safety.[31]

With regard to Ofc. Gebert's response to Lawler's presence within the investigation scene, it is important to recognize "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[32] "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."[33]

The Ninth Circuit has held that "[e]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the officers possessed."[34] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[35] Even if the violated right is in fact clearly established, it may be "difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation [he] confronts."[36] If that is

---

[31]     *Id*.

[32]     *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[33]     *Id.* (internal quotation marks omitted).

[34]     *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (emphasis added) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991)).

[35]     *Messerschmidt v. Millender*, 565 U.S. 535 (2012) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

[36]     *Saucier v. Katz*, 533 U.S. 194, 205 (2001), abrogated in part on other grounds by *Person v. Callahan*, 555 U.S. 223 (2009).

the case, the officer is still entitled to qualified immunity if his "mistake as to what the law requires is reasonable."[37]  These issues are ones of law, determined by the court in the absence of genuine issues of material fact.[38]

In this case, Ofc. Gebert is entitled to the protection of qualified immunity because his conduct did not violate any of Plaintiff's constitutional rights and the split second decision that he did make to request Lawler to leave the immediate area of the accident scene (located in the middle of the road with heavy traffic) presented what he believed to be an unreasonable, and unnecessary hazard. Again, there were no restrictions placed upon Lawler's ability to make video recordings of the collision scene or to record the officers in public while they performed their official duties from his initial location.  It was only after Lawler illegally crossed the highway and began entering the collision scene to record the inside of the private vehicle involved that Ofc. Gebert was then justified to stop and make contact with Lawler, and opted to impose what he considered an appropriate time, place and manner restrictions on his video recording activities.

Tellingly, Ofc. Gebert simply asked Lawler to identify himself to confirm his association with the scene investigation, and then to move away from the active road and scene due to the scene being closed. Lawler's dark clothing and poor visibility created a hazard to himself and others.  This was a reasonably narrow,

---

[37]     *Id*.

[38]     *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 52 (9th Cir. 2014).

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 12 of 24

tailored solution that balanced Plaintiff's rights with the rights of first responders to protect the scene and limit potential hazards.

It is important to recognize that the court's inquiry must be whether this right, as presented in these particular facts, and "in light of the specific context of the case," is clearly established.[39] The court must avoid examining this issue "at a high level of generality" or in the terms of a "broad general proposition."[40] As the Supreme Court has made clear, "It is ... common ground ... that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."[41]

It is clear that on these facts, Lawler's act of recording was not curtailed at all. It was only after Lawler illegally crossed the road and then unnecessarily created a hazard to himself and others by inserting himself into the middle of an active collision scene while wearing dark clothes, during rush-hour, that Ofc. Gebert moved to address Lawler. From Ofc. Gebert's perspective, ensuring that the public and Plaintiff remained safe was paramount. In order to do this, he made a decision to engage with Lawler and ask him to move out of the road to another location. Under these circumstances, it was reasonable to impose a limited time, place and manner restriction on Lawler that ensured an appropriate distance from the scene

---

[39]  *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

[40]  *Al-Kidd* at 742; *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

[41]  *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

LAWLER V. CITY OF WASILLA, ET AL                             CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                     PAGE 13 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP    Document 18    Filed 05/22/26    Page 13 of 24

and that he would not pose a risk to traffic given his location and attire. Despite giving Lawler an opportunity to comply with a reasonable request, Lawler immediately became oppositional and defiant, refusing to provide even his name let alone move to a safer location. The relevant inquiry then is whether existing precedent provided Ofc. Gebert with sufficient knowledge to foreclose his decision to ask Lawler to move. The answer here is quite simply no. There is ample debate among scholars, combined with nuance in the relevant areas of law, that create conflicting outcomes to this question. Conflicting outcomes demonstrate an unsettled state of law, which by application must confer qualified immunity on Ofc. Gebert's decision in the moment to ask Lawler to relocate. Therefore, the Court should find that qualified immunity attached to this aspect of the claimed violation.

### B.     § 1983 Claims Regarding a Violation of Fourth Amendment

With regard to Plaintiff's claim of unreasonable seizure and use of excessive force under the Fourth Amendment to the United States Constitution, it provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things' to be seized.[42]

As explained by the United States Court of Appeals, Ninth Circuit, "The Fourth Amendment protects persons against 'unreasonable searches and seizures.'  U:S. Const. Amend. IV. The 'reasonableness'  and  hence  constitutionality  of  a

---

[42]     Fourth Amendment to the United States Constitution.

warrantless arrest is determined by the existence of probable cause."[43]  "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'"[44]  "Mere assertions of fact in pleadings and memoranda cannot raise genuine issues of fact."[45]

The Ninth Circuit analyzed a §1983 claim which dealt with the question of excessive force and explained, "[t]he central question in determining whether law enforcement officers violated the Fourth Amendment by using excessive force is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them."[46]  As the United State Supreme Court explained in *Graham v. Connor*, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests"" against the countervailing governmental interests at stake.[47]

---

[43]    *Barry v. Fowler*, 902 F.2d 770, 772 (1990) (signaling to *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989) (overruled on other grounds)).

[44]    *Id*. at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

[45]    *Christensen v. NCH Corp.*, 956 P.2d 468, 474 (Alaska 1998) (signaling to *Lord v. Wilcox*, 813 P.2d 656, 658 n. 4 (Alaska 1991)).

[46]    *Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022) (citing to *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) and signaling to *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2242 (2021)).

[47]    *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing to *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 15 of 24

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee v. Garner*, 471 U.S., at 8.9, 105 S.Ct., at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").[48]

Also, the "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with, the 20/20 vision of hindsight."[49] And "[with respect to a claim of excessive force... '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), violates the Fourth Amendment."[50] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[51]

In *Saucier v. Katz*, the United States Supreme Court explained:

It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the

---

[48] *Id*.

[49] *Id*. (signaling to *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

[50] *Id*.

[51] *Id*. at 396-97.

LAWLER V. CITY OF WASILLA, ET AL     CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS     PAGE 16 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP    Document 18    Filed 05/22/26    Page 16 of 24

officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.[52]

Here, the uncontested facts demonstrate that Ofc. Gebert was not familiar with Lawler by physical appearance; was not aware of whether Lawler was involved in the accident; and was not aware of any reason that Lawler should be entering an active investigative scene. Ofc. Gebert observed that Lawler was dressed in all dark clothing; that the weather and conditions made dark clothing a hazard to Lawler and surrounding traffic; that Lawler had just illegally crossed the highway during rush-hour traffic; and that Lawler was refusing to identify himself and refusing to leave the scene when requested. These are the factual circumstances that Ofc. Gebert faced when deciding what action he could lawful take to address the situation, including the lawful use of nondeadly force to effect an arrest.

Based on these facts, Ofc. Gebert was lawfully allowed to conduct a Terry stop for the purpose of "vindicate[ing] society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows."[53] This contact includes obtaining Lawler's personal information in order to confirm whether or not he was a participant or witness to the vehicle collision that was actively being investigated. Lawler's immediate confrontational response and steadfast refusal to abide by a lawful command to provide his personal information, and further refusal

---

[52]    *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

[53]    *Terry v. Ohio*, 392 US 1, 27 (1968).

to vacate the active investigative scene once it was confirmed that he was not involved, presented an ongoing hazard to both himself and first responders engaged in post-accident investigation.

In effectuating an arrest for Disorderly Conduct, Ofc. Gebert was authorized to use nondeadly force, pursuant to AS 11.81.370(a), which provides in pertinent part:

> Sec. 11.81.370.   Justification: Use of force by a peace officer in making an arrest or terminating an escape.
>
> (a) In addition to using force justified under other sections of this chapter, a peace officer may use nondeadly force and may threaten to use deadly force when and to the extent the officer reasonably believes it necessary to make an arrest…
>
> …
>
> (b) The use of force in making an arrest or stop is not justified under this section unless the peace officer reasonably believes the arrest or stop is lawful.[54]

Under these circumstances, there is no basis to claim that a constitutional right was even violated as Ofc. Gebert had probable cause to arrest Lawler. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[55]  A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that

---

[54]    AS 11.81.370(a).

[55]    *White v. Pauly,* 137 S. Ct. 548, 580 U.S. 73, 196 L. Ed. 2d 463 (2017) (internal quotation marks omitted).

right."[56]  Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[57]  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."[58]

With regard to excessive force, "specificity is especially important in the Fourth Amendment context, where…it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."[59]  Whether an officer has used excessive force depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[60]  However, the standards articulated in *Graham* and *Garner* are cast "at a high level of generality."[61]

---

[56]  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted).

[57]  *White*, 137 S. Ct. 548, 580 U.S. 73, 196 L. Ed. 2d 463 (2017) (alterations and internal quotation marks omitted).

[58]  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted).

[59]  *Mullenix*, 577 U.S., at 12 (alterations and internal quotation marks omitted).

[60]  *Graham v. Connor*, 490 U.S. 386, 396 (1989); see also *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force").

[61]  *Brosseau*, 543 U.S., at 199.

LAWLER V. CITY OF WASILLA, ET AL
RULE 12(B)(6) MOTION TO DISMISS
505780\271\2107732

CASE NO. 3:25-CV-00360-ACP
PAGE 19 OF 24

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 19 of 24

"[I]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law."[62]  Thus, to show a violation of clearly established law, Lawler must identify a case that put Ofc. Gebert on notice that this specific type and level of conduct, under these specific circumstances, was unlawful.  Lawler cannot produce such a case, because none exists. Ofc. Gebert was calm and collected in his approach to contacting Lawler without the need to escalate the engagement to more than a conversation regarding location and safety.  Lawler on the other hand, was instantaneously confrontational, agitated, and purposefully escalated the interaction with Ofc. Gebert for the sake of entertaining his online YouTube live viewers.  Make no mistake, Lawler is a professional antagonist who seeks out manufactured confrontations for monetizing his YouTube channel and filing frivolous lawsuits against governmental entities.

This is not a complex case from the standpoint of law enforcement.  The facts very clearly demonstrate that Ofc. Gebert observed a crime in progress and was tasked with investigating that crime.  Lawler was given a direct command to provide identification and leave the immediate scene of an accident, Lawler refused to comply.  Ofc. Gebert is not required by law to provide an unspecified amount of time to a suspect before he moves quickly to next level decision making, which could mean the use of nondeadly force.  Ofc. Gebert's next level of nondeadly force was to apply soft-empty hand control of Lawler's arm and to place him into a patrol

---

[62]     *Id*.

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 20 of 24

vehicle while he undertook the investigation to determine who he was dealing with. As such, Lawler has failed to articulate any legal basis to claim a violation of his Fourth Amendment rights or to demonstrate how Ofc. Gebert's actions are not protected by qualified immunity. Accordingly, these claims should also be dismissed.

## C.  State and Common Law Tort Claims

Plaintiff has also raised various non-specific, state and common law claims, purportedly sounding in tort, which for the reasons previously discussed, also fail as a matter of law.  As explained by the Alaska Supreme Court:

> In *Aspen Exploration Corp. v. Sheffield*, we. addressed the scope of immunity to be conferred for official acts alleged to have violated common law rights. As later summarized in *Alpine Industries, Inc. v. Feyk*, the Aspen test for official immunity from a common law tort claim asks three questions: "First, does the doctrine of official immunity apply to the state official's conduct? Second, if it does apply, is the immunity absolute or qualified? And third, if it is only a qualified immunity, did the state official act corruptly, maliciously, or in bad faith"[63]

Here, Ofc. Gebert would be entitled to official immunity as the conduct falls within the scope of his official authority, and (2) it is a discretionary act.[64]  Further, that this should be considered qualified immunity rather than absolute.[65]  The only remaining question for the court to decide is whether Ofc. Gebert acted corruptly,

---

[63]     *Maness v. Daily*, 307 P.3d 894, 903 (Alaska 2013) (citing to *Aspen Exploration v. Sheffield*, 739 P.2d 150 (Alaska 1987) and to *Alpine Industries, Inc. v. Feyk*, 22 P.3d 445, 447- 448 (Alaska 2001)).

[64]     *Alpine Industries, Inc. v. Feyk*, 22 P.3d 445, 447- 448 (Alaska 2001)).

[65]     See *Id*. at 448-49 (discussing the factors from *Aspen Exploration v. Sheffield*, 739 P.2d 150, 159-160 (Alaska 1987) to decide whether its absolute or qualified immunity that applies.)

LAWLER V. CITY OF WASILLA, ET AL                          CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                      PAGE 21 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 21 of 24

maliciously, or in bad faith.  As explained by the Alaska Supreme Court deciding

*Prentzel*:

> In his briefing, *Prentzel* observes that "malice is a question of fact inappropriate for resolution on a motion for summary judgment." But this observation misses a crucial point: before malice can become a disputed question of fact, the record must contain at least some objective evidence establishing facts capable of supporting an inference of malice. The need for a non-conclusory factual basis is especially important when, as here, the ultimate question involves immunity; as we have emphasized on other occasions, official immunity shields government officials "not just from liability, but from suit." Indeed, we have stressed that "although the existence or absence of malice is generally a question of fact for the jury, when this question has been removed from the case by uncontroverted affidavits and/or depositions, summary judgment may be granted."[66]

Upon review of the facts presented, there is no objective evidence establishing facts capable of supporting an inference of malice, corruption or bad faith by Ofc. Gebert in his decision-making process.  Absent these critical pieces of evidence, the disposition of each tort claim falls into the same qualified immunity analysis already discussed.  As such, qualified immunity should rightfully also attach to common law and state tort claims made here against Ofc. Gebert.

---

[66]    *Prentzel v. State, Dept. of Pub. Safety*, 169 P.3d 573, 585 (Alaska 2007) (third sentence signaling to *Karen L. v. State, Dept of Health & Soc. Servs., Div. of Family & Youth Servs.*, 953 P.2d 871, 879 (Alaska 1998) (fourth sentence citing to *Aspen Exploration v. Sheffield*, 739 P.2d 150, 160 n.24 (Alaska 1987).

LAWLER V. CITY OF WASILLA, ET AL                                      CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                                              PAGE 22 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP    Document 18    Filed 05/22/26    Page 22 of 24

**D. Because Officer Gebert is Entitled to Qualified Immunity, Lawler has Failed to Identify Any Basis through Which the City is Vicariously Liable for Officer Gebert's Actions**

Finally, it is black-letter law that the doctrine of vicarious liability is inapplicable to §1983 suits.[67]  To avoid this clear bar to his claims against the City of Wasilla, Lawler attempts to re-cast his vicarious liability claims against the City as claims sounding in tort.  This approach, too, fails a matter of law as there is no independent tort claim raised against the City and no evidence or inference of malice that can be raised against Ofc. Gebert's actions.  Where a Court finds that an officer of a governmental defendant is entitled to qualified immunity for the officer's actions, this immunity flows through to the governmental defendant, and dismissal is properly granted on the vicarious liability claim.[68]  Because Ofc. Gebert is entitled to qualified immunity for the actions alleged in Lawler's Complaint, the City is also necessarily entitled to such qualified immunity from suit, absent a

---

[67]    *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (stating that because "vicarious liability is inapplicable to *Bivens* and § 1983 suits…the plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions, has violated the Constitution.") (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978) (explaining that section 1983 cannot be read "to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."); *see also Cameron v. Craig,* 713 F.3d 1012, 1023 (9th Cir. 2013) (affirming that municipal liability in § 1983 actions cannot be based on vicarious liability).

[68]    *See, e.g., Ware v. City of Atlanta,* 861 F. App'x 791, 794 (11th Cir. 2021), *cert. denied sub nom. Ware v. Atlanta, GA,* No. 21-6016, 2022 WL 89453 (U.S. Jan. 10, 2022); *Kasiah v. Crowd Sys., Inc.,* 915 F.3d 1179, 1186 (8th Cir. 2019); *Est. of Collins v. Wilburn,* 755 F. App'x 550, 555 (6th Cir. 2018); *Petersen on behalf of L.P. v. Lewis Cty.,* 697 F. App'x 490, 492 (9th Cir. 2017) (all affirming dismissal of plaintiffs' vicarious liability claims against governmental entities where the trial court found that the employee alleged to have committed the wrongful acts was shielded from liability by qualified immunity).

LAWLER V. CITY OF WASILLA, ET AL                     CASE NO. 3:25-CV-00360-ACP
RULE 12(B)(6) MOTION TO DISMISS                              PAGE 23 OF 24
505780\271\2107732

Case 3:25-cv-00360-ACP     Document 18     Filed 05/22/26     Page 23 of 24

distinct and separate tort cause of action, for which there is none plead and no evidence presented.

## V. CONCLUSION

For the reasons articulated herein, the City's Motion Dismiss should be granted as to each cause of action brought, resulting in a dismissal of Plaintiff's Complaint with prejudice.

DATED this 22nd day of May, 2026.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Defendant City of Wasilla

By: /s/ Aaron D. Sperbeck
Aaron D. Sperbeck, ABA #0511112

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 22nd day of May, 2026, a true and correct copy of the foregoing was served on the following via the Court's CM/ECF electronic delivery system:

Brandon C. Lawler *(pro se)*
NewsNowAlaska@gmail.com

Clinton M. Campion
campion@chclawak.com

BIRCH HORTON BITTNER & CHEROT

By: /s/ Aaron D. Sperbeck

Case 3:25-cv-00360-ACP    Document 18    Filed 05/22/26    Page 24 of 24